**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 04:28 PM October 19, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| DAVID B. GARAUX AND ) | CASE NO. 12-60995 |
| KATHRYN A. GARAUX, ) | |
| ) | JUDGE RUSS KENDIG |
| Debtors. ) | |
| ) | |
| ) | **MEMORANDUM OF OPINION** |
| ) | **(NOT FOR PUBLICATION)** |

On August 22, 2012, Debtors sought leave to reopen their case to file a reaffirmation agreement. No one opposes the relief. The court took the matter under advisement *sua sponte*.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## BACKGROUND

Debtors filed a joint chapter 7 petition on April 6, 2012. They listed one vehicle in their schedules, a leased 2011 Ford Fiesta. The creditor is identified as Ford Motor Credit. Their statement of intention, filed with the petition on April 6, 2012, states that they intend to assume the lease.

Debtors obtained a discharge on July 31, 2012.  The case was closed on August 10, 2012.  Debtors failed to file any documents to assume the lease prior to discharge.  On August 22, 2012, they filed a motion to reopen their case "for the purpose of filing a Reaffirmation Agreement."

## DISCUSSION

Debtors request their case be reopened in order to file a reaffirmation agreement.  The court's initial instinct was to deny the motion to reopen under the authority of 11 U.S.C. § 524(c)(1).  Since Debtors obtained their discharge on July 31, 2012, a reaffirmation agreement filed now is not enforceable.  However, upon closer review of the case, the court noted that the underlying agreement was a lease.  The court took the matter under advisement *sua sponte* to determine if Debtors would have the option to reopen the case and file a lease assumption.

When a debtor gives up the benefit of a discharge of an otherwise dischargeable debt, the agreement must conform to the requirements in § 524(c).  The provision begins by stating that "[a]n agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived . . . ."  11 U.S.C. § 524(c).  The term "agreement" is not defined, although no one would dispute its applicability to reaffirmation agreements.  The court must determine if lease assumptions must meet the same requirements.  To start, the court will provide an overview of the bankruptcy code's framework for assumptions of leases and executory contracts. [1]

Section 365 of the bankruptcy code specifically covers leases. To start, authority to assume or reject a lease lies with the trustee pursuant to § 365(b).  The trustee has sixty days from the order for relief to assume the lease, otherwise it is deemed rejected.  11 U.S.C. § 365(d)(1).  The rejection date is one of the driving factors in determining the when the breach of lease is calculated.  11 U.S.C. § 365(g).  A rejected lease that has not previously been assumed operates as a breach of the lease agreement "immediately before the date of the filing of the petition."  11 U.S.C. § 365(g)(1).  Under section 727(b), "a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . ."  As a result, a debtor's liabilities under a rejected lease are dischargeable.  In the present case, the trustee took no action.  As a result, Debtors' liabilities under the lease are dischargeable prepetition debts.

Prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act, the bankruptcy code did not provide for a debtor's assumption of a lease.  Now, however, even if a lease is either rejected or deemed rejected, by a trustee's non-action, a debtor has the ability to assume the lease under 11 U.S.C. § 365(p).  That section provides, in pertinent part:

> (1) If a lease of personal property is rejected or not timely
>     assumed by the trustee under subsection (d), the leased
>     property is no longer property of the estate and the stay

---

[1] From this point forward, the court will use the term lease exclusively.

> under section 362(a) is automatically terminated.
>
> > (2) (A) If the debtor in a case under chapter 7 is an individual, the debtor may notify the creditor in writing that the debtor desires to assume the lease. Upon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default on terms set by the contract.
> >
> > (B) If, not later than 30 days after notice[2] is provided under subparagraph (A), the debtor notifies the lessor in writing that the lease is assumed, the liability under the lease will be assumed by the debtor and not by the estate.
> >
> > (C) The stay under section 362 and the injunction under section 524 (a)(2) shall not be violated by notification of the debtor and negotiation of cure under this subsection.

(footnote added). The provision is not a model of clarity. In addition to the notice issue identified in footnote two, § 365(p) doesn't specifically state when a debtor may pursue a lease assumption. Clearly, a trustee has the initial authority to assume or reject. The trustee's authority, however, does not appear to limit a debtor's ability to simultaneously pursue assumption of a lease. If the debtor is successful, § 365(p)(2)(B) makes it clear that the debtor, not the estate, is assuming the lease. If the debtor is not undertaking any obligation on behalf of the estate, the court finds no reason that a debtor must wait until after the trustee's sixty day period expires.

If the debtor is required to wait until after the trustee's period expires, a redundancy is created in § 365(p)(2)(C). That provision states that no violation of the automatic stay occurs by a debtor's attempt to negotiate a lease assumption, yet section § 365(p)(1) already makes clear that the stay terminates when the trustee rejects or does not timely assume the lease. If a debtor must wait until after the trustee's assumption period expires, there is no stay to violate.

Since § 365(p) does not contain a deadline for a debtor to request assumption, a debtor may wait until the trustee's period expires. If a debtor waits sixty days to start the assumption process, the ability to effectuate the assumption before discharge may be difficult. As an example, in this case, Debtors filed their case on April 6, 2012. The trustee could assume or reject the lease through June 5, 2012. The deadline to object to discharge was July 30, 2012. Considering § 365(p)'s back and forth communications between a debtor and the creditor, including the thirty day period referenced in subsection (B), it may be difficult to execute a lease assumption before

---

[2] It is not clear which notice in subsection (A) is referenced – the debtor's notice to the creditor or the creditor's responsive notice to the debtor.

3

the discharge deadline. Thus, the addition of subjection (C) is a natural means to avoid running afoul of the discharge injunction. The pertinent point is in the recognition that the discharge injunction may apply to a debtor's effort to negotiate a lease assumption. A creditor would only need protection from violating the discharge injunction if the activity was occurring post-discharge. This has led one court to conclude that "Congress clearly contemplated that lease assumption agreements might be made after entry of the discharge, otherwise there would be no need to authorize the parties to negotiate such agreements notwithstanding the discharge injunction under § 524(a)(2)." In re Thompson, 440 B.R. 130, 131-32 (Bankr. W.D. Mich. 2010) *rev'd and remanded* Thompson v. Credit Union Fin. Grp., 453 B.R. 823 (W.D. Mich. 2011); *see also* In re Mortensen, 444 B.R. 225, 230 (Bankr. E.D.N.Y. 2011). If a lease assumption can be executed after discharge, it cannot be an agreement contemplated by § 524(c) because of subsection (c)(1)'s requirement that the agreement be made prior to discharge.

As a result of the confusion that arises from the provision, particularly with regard to the interplay between § 365(p) and § 524, two lines of thought have developed. Some courts find that a lease assumption and a reaffirmation agreement are separate and distinct events 'and each undertaking imposes different steps and confers different rights upon the parties to the respective agreements.' In re Ebbrecht, 451 B.R. 241, 246 (Bankr. E.D.N.Y. 2011) (citing Mortensen, 444 B.R. 225, 226); *see also* In re Perlman, 468 B.R. 437 (Bankr. S.D. Fla. 2012). These courts rely heavily on the separate bankruptcy code provisions and rules that govern reaffirmation, assumption and redemption as a basis for their distinctive treatments. Mortensen, 444 B.R. 225, 228 (citing Thompson, 440 B.R. 130 *rev'd and remanded* Thompson v. Credit Union, 453 B.R. 823). Courts following this view may also point to Congress' failure to reference lease assumptions in § 524(c) or, alternatively, to provide similar protections under § 365(p) when a debtor assumes a lease. In Mortensen, a factually similar case, the court determined that since § 524(c) did not apply to the lease assumption, eliminating any requirement for the agreement to be executed before discharge, there was cause to reopen the case and file the lease assumption. 444 B.R. 225. Under these cases, there is no interplay between §§ 365(p) and § 524(c). As a result, courts refuse to approve reaffirmation agreements for leases, Ebbrecht, 451 B.R. 241, 248, and may find no need for court approval of an assumption agreement. Perlman, 468 B.R. 437, 441. The problem with these cases is twofold. First, the cases all reference the bankruptcy court's Thompson opinion which was overruled by the District Court for the Western District of Michigan. Second, only Mortensen specifically deals reopening and a direct confrontation of a discharge issue.

The opposing view finds that § 365(p) does not always operate independently of § 524. *See, e.g.,* Thompson v. Credit Union Fin. Grp., 453 B.R. 823; In re Eader, 426 B.R. 164 (Bankr. D. Md. 2010); In re Creighton, 427 B.R. 24 (Bankr. D. Mass. 2007). These courts hybridize § 524(a) and § 365(p). The courts generally will permit a debtor to assume a lease without court involvement or approval. However, if the debtor intends to revive personal liability under the lease, and give up the benefit of discharge, the courts require the agreement conform with the § 524(c) requirements. In this regard a lease assumption is merely a "species of reaffirmation agreement." Creighton at 28. Courts generally cite the policy favoring the protection and informed consent of the debtor as a basis for requiring lease assumptions to comply with § 524(c).

4

Creighton, 427 B.R. 24, 28. Both Creighton and Thompson v. Credit Union read the "will be assumed" language § 365(p)(2)(B) to suggest that the assumption of the liability requires a future act, something more than the steps previously outlined in § 365(p). The Creighton court stated it understood "§ 365(p)(2)(B) as resolving the preliminary issue of *who* will assume, not as dictating how and when the assumption process is complete." 427 B.R. 24, 28 (italics original). To these courts, assumption of the liability is complete upon execution of an agreement that meets the requirements of § 524(c).

Under this view, the fact that the agreement creates a post-petition obligation is immaterial. The Creighton court acknowledged that a lease assumption is a postpetition obligation and postpetition debts are generally not dischargeable under § 727(b). However, § 524(c) creates an exception to this rule for certain postpetition agreements that give up discharge benefits. Consequently, Creighton and Thompson v. Credit Union both found the postpetition obligation argument unavailing.

The reasoning utilized in Creighton and Thompson v. Credit Union is persuasive. While the court does not necessarily agree with the minute parsing of the language of § 365(p),[3] it does agree with the larger concepts related to discharge. No one can dispute the different character of a lease assumption from a reaffirmation agreement. As other courts have recognized, a lessor's bargaining position is much different in a lease assumption than a creditor's position under a reaffirmation agreement. Mortensen, 444 B.R. 225, 231. For the question presented here, however, the similarities override the differences. Both involve liabilities rooted prepetition that are subject to discharge. By executing either a lease assumption or a reaffirmation agreement, debtors are releasing substantial and consequential rights, protections and benefits. For this reason, the court can find no reason that a debtor should be provided more protection, via § 524(c), under a reaffirmation agreement than a lease assumption.

An absurdity results because this conclusion will effectively render much of § 365(p) meaningless. Since it is unlikely that creditors will accept a lease assumption that does not revive a debtor's liability, the requirements of § 524(c) will supplant those of § 365(p). Most courts recognize that § 365(p) does not require court involvement, while § 524(c) does. Similarly, many courts found no time constraints for executing a lease assumption in § 365(p), while § 524(c)(1) will require the lease assumption to be executed before discharge. Further, since most lease assumptions will now be executed before discharge, there will be no need for negotiations that potentially violate the discharge injunction, eliminating the need for the protection referenced in § 365(p)(2)(C). It is not possible to neatly stitch the applicable bankruptcy code provisions together.

Additionally, this conclusion also potentially creates two types of a lease assumptions: those reviving a debtor's liability and those that do not. *See, e.g.,* Eader, 426 B.R. 164; In re

---

[3] As a specific example, the court does not agree that the "will be assumed" phrase in the last line of § 365(p)(2)(B) should be read to reference another step in lease assumption. This phrase merely offers further clarification of the responsible party under the assumption. The previous line clearly states that the liability "is" assumed once the debtor provides notice of the assumption.

<u>Farley</u>, 451 B.R. 235 (Bankr. E.D.N.Y. 2011).   There is nothing preventing a debtor from filing a lease assumption by following the procedures set forth in § 365(p).   However, unless a debtor "reaffirms" the debt in accordance with § 524 and Federal Rule of Bankruptcy Procedure 4008, "any waiver of discharge contained in the lease assumption agreements is ineffective as to preventing the indebtedness under the lease and personal liability under [the] assumption agreement from being discharged."[4]   <u>Eader</u>, 426 B.R. 164, 167-68.   While technically possible, it is practically unlikely that a non-compliant lease assumption will be filed.   A creditor gains little value from agreeing to allow a debtor to assume a lease that does not comply with § 524(c).   Many creditors already use the reaffirmation forms for leases.   Consequently, this decision may have little impact on current practice.   However, because it is a technical possibility to assume a lease after discharge, the court will grant Debtors' motion to reopen for the purpose of assuming a lease.   However, any attempt to revive discharged liability under the lease will be ineffective for noncompliance with § 524(c).

An order will be entered immediately.

#         #         #

**Service List:**

Thomas Bartilson
Borders & Gerace, LLC
306 Market Avenue, North
Suite 1020
Canton, OH 44702

Anne Piero Silagy, Esq
220 Market Ave S
#900
Canton, OH 44702

---

4 <u>Eader</u> required both a lease assumption and a reaffirmation agreement.   The court finds no reason for both.   Since the term "agreement" in § 524(c) is not defined, the court finds that it is broad enough to encompass a lease assumption.

6